UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CARL WAYNE SCIVICQUE AND REBECCA SCIVICQUE | CIVIL ACTION |
| VERSUS | NO: 11-1883 |
| SUNSHINE STATE DAIRY FARMS, LLC, ET AL. | SECTION: "A" (4) |

## ORDER AND REASONS

### I. INTRODUCTION

Before the Court is a **Motion for Summary Judgment Based on the Professional Rescuer Doctrine, and in the Alternative, Motion for Partial Summary Judgment on Damages and/or Motion in Limine with Regard to Damages (Rec. Doc. 20)** filed by defendants Sunshine State Dairy Farms, LLC ("Sunshine") and Steadfast Insurance Company ("Steadfast"). Plaintiffs Carl Wayne Scivicque and Rebecca Scivicque have filed an opposition to the motion **(Rec. Doc. 23)**. The motion, set for hearing on March 14, 2012, is before the Court on the briefs without oral argument. For the following reasons the motion is **GRANTED** in part and **DENIED** in part.

### II. BACKGROUND

Plaintiffs filed this lawsuit to recover for personal injuries that they claim to have sustained following the accidental release of approximately 1,000 lbs. of anhydrous ammonia by Defendant Sunshine. Plaintiffs are husband and wife; they are suing for damages including but not limited to: medical expenses, loss of earnings and earning capacity, physical pain and

1

suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, and, in the case of Mrs. Scivicque, loss of services, society, and consortium based on Defendants' alleged negligence. Defendant Sunshine has stipulated that it was at fault in causing the anhydrous ammonia release. This action was first filed on July 8, 2011 in the 21st Judicial District Court for the Parish of Tangipahoa, State of Louisiana, and was later removed to federal court based on diversity jurisdiction. Plaintiffs are citizens of Louisiana, while defendants are foreign limited liability companies and corporations authorized to do and doing business in the state of Louisiana.

Plaintiff Carl Wayne Scivicque is a sergeant employed by the Hammond Police Department. On the night of July 11, 2010 at approximately 9:45 p.m., he was notified that someone had reported a strong smell of ammonia in the area of the Winn-Dixie warehouse facility on Highway 190 in Hammond, Louisiana. Plaintiff and the police officers under his supervision drove to the scene, where Plaintiff states that he could see "a cloud of ammonia rolling off of the Sunshine State Dairy Farms building next to the Winn-Dixie warehouse." Plaintiff directed the officers to divert traffic from and evacuate the area.

Plaintiff states in his deposition that, as he was in the process of notifying nearby residents to take shelter or evacuate, he saw an elderly man and woman standing by the road with towels over their faces. He testified that he drove up to the couple to tell them to seek shelter inside of their house, and that as he stood in the doorway of his car speaking to them, his eyes began to water. Plaintiff realized that he was standing in a cloud of ammonia and quickly re-entered his car in order to retreat from the gas. Plaintiff testified that he was exposed to the toxic cloud for approximately one minute. Plaintiff subsequently vomited and began to

experience coughing and trouble breathing. He received medical treatment from an ambulance located near the scene of the ammonia leak, and was ultimately transported to the emergency room at North Oaks Hospital in Hammond, where he received treatment and was later released.

Approximately ten days after the ammonia exposure, Plaintiffs took a trip to a casino in Mississippi. While Mrs. Scivicque spent time at the spa, Mr. Scivicque took a two to three hour nap. Upon waking, he discovered a large lump on the right side of his neck, which he described as about the size of his fist. The lump had not been visible prior to his nap. Doctors eventually diagnosed Mr. Scivicque with squamous-cell carcinoma, or throat cancer. Plaintiff subsequently received treatment at MD Anderson Cancer Center in Houston, Texas in the form of chemotherapy, radiation treatments, and surgery. He is currently considered cancer-free.

Via the instant motion, Defendants move the Court to dismiss the claims of Plaintiffs based on the professional rescuer doctrine, which prohibits tort recovery by a professional rescuer injured while responding to an emergency. In the alternative, Defendants seek to strike Plaintiffs' claim for damages and prohibit any testimony seeking to relate the primary plaintiff's treatment for cancer to the ammonia exposure. This alternative argument is based on Defendants' assertion that Plaintiffs have failed to meet their burden of establishing causation by a preponderance of the evidence. Defendants state that there is a lack of medical evidence establishing that it is more probable than not that Mr. Scivicque's cancer was caused by his exposure to ammonia. Defendants argue that Plaintiffs should therefore not be permitted to present any evidence at trial that the cancer is related to chemical exposure.

Plaintiffs do not oppose the granting of summary judgment on the issue of whether the primary plaintiff's cancer was caused by his exposure to Defendants' ammonia leak; therefore,

3

that portion of Defendants' motion for summary judgment will be granted as unopposed. However, Plaintiffs deny the applicability of the professional rescuer doctrine to the present case. The Court addresses the parties' arguments regarding this doctrine below.

### III. STANDARD OF REVIEW

Summary judgment is mandated when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing such evidence, the court will draw all justifiable inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "genuine" when its resolution determines the non-moving party's entitlement to relief. Anderson, 477 U.S. at 248.

Once the movant has demonstrated "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to come forward with specific facts showing a genuine issue of fact for trial. Celotex, 477 U.S. at 325; Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,587 (1986). Conclusory allegations and denials, speculation, improbable references, unsubstantiated assertions and legalistic argumentation are not an adequate substitute for specific facts showing that there is a genuine issue of fact necessitating trial. SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993). The court will not assume that the non-moving party will meet its burden in the future, as such party is obligated to respond affirmatively to a motion for summary judgment and may not rest upon the pleadings

4

without specific factual allegations in support of these claims.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

Although the movant must demonstrate a lack of evidence as to one or more necessary elements of the non-moving party's case, it is not necessary that the movant negate the elements of the non-moving party's case.  Id., citing Celotex, 477 U.S. at 323 and Lujan, 497 U.S. at 885–86.  If the movant fails to meet this initial burden, the motion must be denied, regardless of the non-moving party's response.  Id.

**IV.   LAW AND ANALYSIS**

Defendants argue that, as a police officer responding to a call, Mr. Scivicque assumed the risk of the injuries that he incurred on the scene of the ammonia leak.  According to Defendants, this is a "classic case" in which Plaintiffs' claims are prohibited by the professional rescuer doctrine.  The professional rescuer doctrine, sometimes referred to as the "fireman's rule," states that a professional rescuer who is injured in the performance of his duties assumes the risk of such injury and is thus not entitled to damages.  Gann v. Matthews, 873 So.2d 701, 705 (La.App. 1 Cir. 2004) (citing Mullins v. State Farm Fire and Cas. Co., 697 So.2d 750 (La.App. 1 Cir. 1997)).  However, Louisiana courts have recognized that professional rescuers do not assume the risk of *all* injury without recourse.  Mullins, 697 So.2d 750, 752 (citing Langlois v. Allied Chem. Corp., 258 La. 1067, 249 So.2d 133 (1971)(superceded by statute)).

A professional rescuer may recover for an injury caused by a risk which is independent of the emergency or problem he has assumed the duty to remedy.  Holloway v. Midland Risk Ins. Co., 33,026, pp. 4-5 (La.App. 2 Cir. 2000), 759 So.2d 309, 313-14; see also Chinigo v. Geismar

5

Marine, Inc., 512 So.2d 487, 490 (La.App. 1 Cir. 1987), writs denied, 514 So.2d 457. A risk is independent of the task, and the assumption of the risk rationale does not bar recovery, if the risk-generating object could pose the risk to the rescuer in the absence of the emergency or specific problem undertaken. Holloway, 759 So.2d at 313-14.

On the other hand, "dependent" risks arise from the very emergency that the professional rescuer was hired to remedy. Henry v. Barlow, 04–1657, p. 8 (La.App. 3 Cir. 2005), 901 So.2d 1207, 1213. The assumption rationale bars recovery from most dependent risks except when (1) the dependent risks encountered by the professional rescuer are so extraordinary that it cannot be said that the parties intended the rescuers to assume them or (2) the conduct of the defendant may be so blameworthy that tort recovery should be imposed for the purposes of punishment or deterrence. Gann, 873 So.2d at 705, (citing Mullins, 697 So.2d at 752–53).

Plaintiffs argue that the first "dependent risk" exception applies in the present case, asserting that professional rescuers do not assume the risks associated with exposure to toxic chemicals when they respond to such an emergency. In support of this argument, Plaintiffs point to the state court case of Chinigo v. Geismar Marine, referenced *supra*, in which a state trooper sued for injuries caused by a toxic exposure he suffered after pulling over and approaching a tank truck carrying hazardous chemicals. See Chinigo, 512 So.2d 487.

The court in Chinigo quoted extensively from a law review comment which stated that recovery should be permitted for certain dependent risks under the "extraordinary risk" or "blameworthy risk" scenarios, which are described above and were later employed by the state courts in Gann, 873 So.2d 701, and Mullins, 697 So.2d 750. Id. at 490-91 (quoting Richard D. Zimmerman, *Negligence Actions by Police Officers and Firefighters: A Need for a Professional*

6

*Rescuers Rule*, 66 Cal.L.Rev. 585, 598-602 (1978)). The court employed the interpretation espoused by the comment: namely, that "risks may be extraordinary because the hazard is hidden or unknown, or because rescuers must remedy a risk that is *beyond their training and experience*." Id. at 491. (Emphasis added)

The court in Chinigo found that the professional rescuer doctrine was inapplicable under those circumstances because the defendants had improperly handled a hazardous chemical in a wanton manner, thus creating an "extraordinary risk" that was "beyond the training and experience" of the plaintiff to remedy. Id. at 492. Therefore, in that case, the professional rescuer rule did not provide a defense for the defendant. Id.

The Court finds, consistent with Chinigo, that summary judgment based on the applicability of the professional rescuer doctrine would be inappropriate in the instant matter. The parties agree that Mr. Scivicque's exposure to the ammonia gas was a "dependent" risk which arose from the emergency that he, as a law enforcement professional, was hired to remedy. However, it is unclear that the plaintiff assumed the risk of encountering toxic materials as part of his profession. According to the record, Mr. Scivicque had no special training or equipment to deal with the release of any toxic chemicals. Although he encountered the toxic gas while performing his duty as a policeman by warning and evacuating others from the area, Mr. Scivicque was not trained to recognize the danger posed by the ammonia leak or taught methods to avoid injury during a leak scenario. Under these circumstances, the Court finds that the ammonia leak may have represented an extraordinary risk outside of the scope of the risk assumed by a professional rescuer.

There is a genuine issue of material fact regarding whether this case falls within the first

exception to the bar to recovery for injuries that result from a dependent risk; therefore, Defendants have not met their burden of demonstrating that the affirmative defense of the professional rescuer doctrine is applicable to the present case, and Defendants' motion to dismiss Plaintiffs' claims on these grounds must be denied.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment Based on the Professional Rescuer Doctrine, and in the Alternative, Motion for Partial Summary Judgment on Damages and/or Motion in Limine with Regard to Damages (Rec. Doc. 20)** filed by defendants is **GRANTED** in part and **DENIED** in part, as explained above.

This 28th of March, 2012.

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE